UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND
(SOUTHERN DIVISION)

| | | |
|---|---|---|
| MONICA JEFFRIES | * | |
| Plaintiff | * | |
| v. | * | Civil Case No. 8:22-cv-00526-AAQ |
| MARYLAND DEPARTMENT OF HOUSING AND COMMUNITY DEVELOPMENT, et al. | * * | |
| Defendants | * | |

**MEMORANDUM OPINION AND ORDER**

This is a case involving a denial of emergency rental assistance made available under the Coronavirus Economic Stabilization Act, 15 U.S.C. § 9001, *et seq.* Pending before the Court are Defendants Maryland Department of Housing and Community Development's and Prince George's County Department of Housing and Community Development's Motions to Dismiss Plaintiff Monica Jeffries's Amended Complaint. ECF Nos. 44 and 46. The Motions have been fully briefed, and I conclude that a hearing is not necessary under this Court's Local Rules. *See* Loc. R. 105.6 (D. Md. 2023). For the reasons discussed below, Maryland Department of Housing and Community Development's Motion will be granted, and Prince George's County Department of Housing and Community Development's Motion will be denied.

**BACKGROUND**

1

Throughout the COVID-19 pandemic, Congress appropriated funds for states and localities to operate emergency rental assistance programs.[1] *See* Grant A. Driessen, Maggie McCarty & Libby Perl, Cong. Rsch. Serv., R46688, *Pandemic Relief: The Emergency Rental Assistance Program* 1–2 (2023). Plaintiff Monica Jeffries alleges that around March or April of 2020, she filed an initial application for emergency rental assistance through Defendant Prince George's County Department of Housing and Community Development ("Prince George's County" or "the County") as well as Defendant Maryland Department of Housing and Community Development ("the Maryland Department").[2] *See* ECF No. 1-4, at 1–2; ECF No. 51, at 1. In June of 2021, Ms. Jeffries's application was denied. ECF No. 4, at 3. According to Ms. Jeffries, the emergency rental assistance program ("ERAP") administrator erroneously used Ms. Jeffries's son's income as Ms. Jeffries's income and denied her application on that basis. *See* ECF No. 1, at 2; ECF No. 1-4, at 1. Though Ms. Jeffries submitted documentation proving that her son did not live with her and thus his income was not part of her household income, one year passed before she received a response, and the department's decision remained unchanged. *See* ECF No. 1, at 2. Ms. Jeffries sought to appeal the denial of her application, but "the county ERAP representatives" told her there was no appeals process in place. ECF No. 4, at 2. Ms. Jeffries alleges that she never received information regarding an appeal, even though she requested such information and an appeals process had been established by October of 2021. *See id.* at 2, 13. Additionally, Ms. Jeffries

---

[1] Because the case is currently before the Court on Defendants' Motions to Dismiss, I accept all well-pled allegations as true for the purpose of deciding these Motions. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[2] Throughout her Amended Complaint, Ms. Jeffries mostly uses general terms, such as "[t]he agency" or "ERAP [emergency rental assistance program] Officials," *e.g.*, ECF No. 4, at 2, without explicitly indicating whether she is referring to the County or Maryland Department, though she provides names of specific individuals who were involved in the review and adjudication of her application, *see* ECF No. 1-4, at 1–5.

claims that she has not received any documentation explaining the basis for the denial of her application. *Id.* at 11. As a result of the denial of her application for ERAP benefits, Ms. Jeffries was unable to pay her rent and ultimately became homeless. *See* ECF No. 1-4, at 5.

On March 4, 2022, Ms. Jeffries filed an initial Complaint in this Court against the Maryland Department of Housing and Community Development, ECF No. 1, at 1, and the Consumer Financial Protection Bureau ("CFPB"), ECF No. 1-3, at 1. On June 28, 2022, Ms. Jeffries filed a supplement to her Complaint, naming Prince George's County Department of Housing and Community Development as a defendant. ECF No. 4, at 1. The initial Complaint and supplement constitute Ms. Jeffries's Amended Complaint. ECF No. 21. Ms. Jeffries's claims against the CFPB were dismissed without prejudice on July 21, 2022. ECF No. 7. On August 15, 2022, the Maryland Department filed an initial Motion to Dismiss Ms. Jeffries's Complaint, ECF No. 12, which was denied without prejudice for failure to file a Notice of Intent to File a Motion, ECF No. 14. Prince George's County then filed a Motion to Dismiss Ms. Jeffries's Amended Complaint on April 13, 2023, ECF No. 44, and the Maryland Department filed another Motion to Dismiss Ms. Jeffries's Amended Complaint the next day, ECF No. 46. Ms. Jeffries filed a Response in Opposition to both Motions on May 8, 2023, ECF No. 48, to which the Maryland Department replied on May 19, 2023, ECF No. 49, and Prince George's County on May 22, 2023, ECF No. 50. Ms. Jeffries filed a Sur-Reply to the Maryland Department on May 24, 2023, ECF No. 51, and to Prince George's County on May 26, 2023, ECF No. 52. Ms. Jeffries has filed all of her pleadings pro se.

## STANDARD OF REVIEW

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a party may move to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).

When ruling on a motion to dismiss, the court considers whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). To state a facially plausible claim, the plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The plaintiff need not plead facts that are probable, but must present facts showcasing more than a "sheer possibility" that the conduct perpetrated by the defendant is unlawful. *Id.* Specifically, a plaintiff must provide more than "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555. The court should construe all factual allegations in the light most favorable to the plaintiff, *Mylan Lab'ys, Inc. v. Matkari*, 7 F.3d 1130, 1134 (1993), and "draw all reasonable inferences in favor of the plaintiff," *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (quoting *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009)). Finally, while a court generally will not consider extrinsic evidence when ruling on a motion to dismiss, "the court may consider, without converting the motion to dismiss into one for summary judgment, documents attached to the complaint as exhibits." *Reamer v. State Auto. Mut. Ins. Co.*, 556 F. Supp. 3d 544, 549 (D. Md. 2021).

Additionally, a party may move to dismiss a complaint under Rule 12(b)(1) for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). The plaintiff bears the burden of proving subject matter jurisdiction. *See Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991). A challenge under Rule 12(b)(1) "may attack the complaint on its face, in that the complaint fails to allege facts upon which the court can base jurisdiction, or it may attack the truth of the underlying jurisdictional allegations contained in the complaint." *Crosten v. Kamauf*, 932 F. Supp. 676, 679 (D. Md. 1996). When considering a facial challenge,

"the court accepts the allegations in the complaint as true, as it would on a motion pursuant to 12(b)(6)." *Id.* On the other hand, when considering a challenge to the truth of the underlying allegations, "the court may consider evidence outside of the complaint to determine whether sufficient facts support the plaintiff's jurisdictional allegations." *Id.*

Courts in the Fourth Circuit apply these standards less stringently to pleadings filed by pro se plaintiffs and recognize a duty to construe such pleadings "liberally." *E.g.*, *DePaola v. Clarke*, 884 F.3d 481, 486 (4th Cir. 2018). Indeed, "[p]ro se complaints are entitled to special care to determine whether any possible set of facts would entitle the plaintiff to relief." *Smith v. Esper*, No. GLR-18-3844, 2020 WL 5798085, at *5 (D. Md. Sept. 29, 2020) (citing *Hughes v. Rowe*, 449 U.S. 5, 9–10 (1980) (per curiam)).

## ANALYSIS

### I. Rule 12(b)(6)

Both Defendants argue that Ms. Jeffries's Amended Complaint should be dismissed under Rule 12(b)(6) for failure to state a claim upon which relief can be granted. Specifically, Prince George's County claims that "none of the statutes cited by [Ms. Jeffries] contain language creating a private federal cause of action." ECF No. 44-1, at 5. According to Prince George's County, since Ms. Jeffries is not "the intended beneficiary" of any of the statutes on which her Amended Complaint is based, her Amended Complaint "fails as a matter of law." *Id.* at 6. While the Maryland Department "adopts and incorporates" these arguments, ECF No. 46-1, at 5, it adds that Ms. Jeffries's Amended Complaint "does not allege any facts *specific to the [Maryland] Department*," *id.* at 4. In particular, the Maryland Department argues that the Amended Complaint contains no allegations that ERAP is a program of the Maryland Department or that Ms. Jeffries applied for ERAP benefits through the Maryland Department. *Id.* Instead, according to the

Maryland Department, Ms. Jeffries's Amended Complaint "makes it clear that [her] application was through the *Prince George's County* Department of Housing and Community Development . . . , which is a separate and distinct entity from the [Maryland] Department." *Id.* at 4–5.

Viewing the facts in the light most favorable to Ms. Jeffries, and in accordance with its duty to construe her Amended Complaint liberally, the Court finds that Ms. Jeffries has stated a claim under 42 U.S.C. § 1983 against Prince George's County for violation of her procedural due process rights.  The Fourth Circuit has held that individuals have a "constitutionally protected property interest" in their right to apply for benefits to which they have a "legitimate claim of entitlement." *Mallette v. Arlington Cnty. Emps.' Supplemental Ret. Sys. II*, 91 F.3d 630, 634 (4th Cir. 1996) (quoting *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972)).  For a statute to give rise to a claim of entitlement, it must "limit meaningfully the discretion of the decisionmakers," *id.* at 635 (quoting *Bd. of Pardons v. Allen*, 482 U.S. 369, 382 (1987) (O'Connor, J., dissenting)), such that once an applicant meets "particularized eligibility criteria," the decisionmakers must award the relevant benefits, *id.*  Further, a claim of entitlement may be "bolstered by the nature of the benefit at stake." *Id.* at 636.  Applying this framework, Fourth Circuit courts have found constitutionally protected property interests in plaintiffs' potential eligibility for a range of benefits, including disability- and health-related retirement benefits, *see id.* at 634; *Smith v. Town of Cramerton*, No. 3:18-CV-631-RJC-DCK, 2019 WL 4233614, at *1, *7 (W.D.N.C. Sept. 5, 2019); *Main v. Montgomery County*, 961 F. Supp. 125, 128 (D. Md. 1997), housing choice vouchers, *Page v. Richmond Redevelopment & Hous. Auth.*, No. 3:21-cv-462-HEH, 2021 WL 5237241, at *3 (E.D. Va. Nov. 10, 2021); *Jackson v. City of Aiken Hous. Auth.*, No. 1:16-2831-RMG, 2017 WL 4324856, at *3 (D.S.C. Sept. 26, 2017), and coronavirus-related

unemployment benefits, *Whicker v. Va. Emp. Comm'n*, No. 1:21CV00047, 2023 WL 2987586, at *2–3 (W.D. Va. Apr. 18, 2023).

Importantly, courts have drawn a distinction between "the right to receive a benefit" and "the right to fair decision-making before the benefit is denied." *Mallette*, 91 F.3d at 637 (citing *Bennett v. Tucker*, 827 F.2d 63, 73 (7th Cir. 1987)). Thus, if an applicant can make a prima facie showing that she is eligible for a particular benefit, she is entitled to procedural due process protections in the application process, even if she is ultimately found to be ineligible for the benefit. *See id.*; *Eberhardt v. Fairfax Cnty. Emps.' Ret. Sys. Bd. of Trs.*, No. 1:10-cv-771, 2012 WL 1080926, at *5 (E.D. Va. Mar. 30, 2012).

Here, Ms. Jeffries makes a plausible claim that she had a property interest in her right to apply for ERAP benefits. Ms. Jeffries cites a number of statutory and regulatory provisions throughout her Amended Complaint, among them provisions of 15 U.S.C. § 9058a,[3] which appropriates funds for emergency rental assistance pursuant to the Coronavirus Economic Stabilization Act. *See id.* § 9058a(a). The statute directs such funds to be "allocated and paid to eligible grantees," including States and local government units. *Id.* § 9058a(b)(1)(A). With respect to use of the funds, the statute mandates that eligible grantees "provide financial assistance and housing stability services to eligible households," *id.* § 9058a(c)(1), and defines an "eligible

---

[3] Ms. Jeffries cites the session law, made available on the U.S. Treasury's website, and thus refers to it as "U.S. Treasury Guidelines." *See, e.g.*, ECF No. 1, at 1; ECF No. 1-4, at 2. Although Congress enacted the emergency rental assistance program in December of 2020, and Ms. Jeffries alleges that she initially applied for assistance around March or April of 2020, ECF No. 1-4, at 1-2, she also alleges that she did not receive a decision regarding her application until June of 2021, ECF No. 4, at 3. Viewing the facts in the light most favorable to Ms. Jeffries, it is plausible that Prince George's County considered her application under the emergency rental assistance program set forth in 15 U.S.C. § 9058a.

household" using specific criteria, *id.* § 9058a(k)(3).[4]  Ms. Jeffries alleges that, according to these criteria, she was eligible for emergency rental assistance.  *See* ECF No. 1, at 2; ECF No. 1-4, at 2-3.  Specifically, Ms. Jeffries alleges that in accordance with § 9058(k)(3)(A)(i), she experienced a reduction in her household income after her brother died from COVID-19; in accordance with § 9058(k)(3)(A)(ii), she was at risk of homelessness when she applied for ERAP benefits, as demonstrated by the fact that she is now homeless; and in accordance with § 9058(k)(3)(A)(iii), her household income is at or below eighty percent of the median income in her area.  *See* ECF No. 1-4, at 2-3.  Given the limited discretion available in the statute and Ms. Jeffries's prima facie showing of eligibility, particularly in light of the nature of the benefit at stake — namely, assistance to individuals at risk of homelessness or housing instability — Ms. Jeffries has sufficiently alleged a property interest in her potential eligibility for ERAP benefits.

Once a plaintiff establishes a constitutionally protected property interest in their potential eligibility for a benefit, the court must determine what process is due in the application process.  "At a minimum, the Constitution requires notice and some opportunity to be heard."  *Mallette*, 91 F.3d at 640 (citing *Joint Anti-Fascist Refugee Comm. v. McGrath*, 341 U.S. 123, 178 (1951) (Douglas, J., concurring)).  Beyond that, courts balance three factors — (1) the "private interest" at stake; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail" — to determine what process is due in a particular case.  *Id.* (quoting *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976)).  In this

---

[4] Additionally, the statute mandates prioritization of applications from households meeting specific criteria.  *See* 15 U.S.C. § 1508a(c)(4).

analysis, Fourth Circuit courts "consider any post deprivation remedies that [the government] provides." *Eberhardt*, 2012 WL 1080926, at *6 (citing *Mallette*, 91 F.3d at 640 n.6). Thus, courts have found plausible claims of procedural due process violations where, for example, plaintiffs were not given a "meaningful opportunity to present [their] side," *Mallette*, 91 F.3d at 641, erroneously denied benefits for which they were eligible, *Smith*, 2019 WL 4233614, at *7, and subjected to delayed adjudication of their claims for benefits, *Whicker*, 2023 WL 2987586, at *2–3.

Ms. Jeffries's Amended Complaint establishes a plausible claim that she was not afforded constitutionally adequate procedural safeguards before her application for ERAP benefits was denied. Applying the *Mathews v. Eldridge* factors, the Court first finds that Ms. Jeffries's interest in ERAP benefits, which could have helped her avoid losing her home, is significant. Second, Ms. Jeffries alleges several facts that indicate a risk of erroneous deprivation resulting from the procedures — and lack thereof — used by Prince George's County. To start, Ms. Jeffries claims that the ERAP administrators erroneously used her son's income as her own in determining that she was ineligible for assistance, and then took one year to respond to documentation she submitted proving that her son did not live with her. *See* ECF No. 1, at 2; ECF No. 1-4, at 1. When Ms. Jeffries sought to appeal the denial of her application for ERAP benefits, "county ERAP representatives" told her that there was no appeals process in place. ECF No. 4, at 2. Ms. Jeffries alleges that although an appeals process was established in October of 2021, *see id.*, as of June 23, 2022, "the agency ha[d] not provided [her] with any information regarding an appeal," *id.* at 13. Further, Ms. Jeffries alleges that she never received any documentation explaining the basis for the denial of her application, even despite her request for a written explanation. *Id.* at 11. Finally, with respect to the third factor, Ms. Jeffries has alleged facts sufficient to indicate that it would not

have been unduly burdensome for Prince George's County to provide her with additional procedural safeguards. Specifically, Ms. Jeffries alleges that by October of 2021, there was an appeals procedure in place, *see id.* at 2, as well as numerous other policies and procedures for reviewing and adjudicating ERAP applications, *see id.* at 11–12; *cf., e.g.*, *Mallette*, 91 F.3d at 641 (citing defendant's hearing procedures information sheet in determining that defendant would not have been "unduly burdened by providing accurate and timely notice to [plaintiff]"). Therefore, the Court will deny Prince George's County's Motion to Dismiss pursuant to Rule 12(b)(6).

Turning to the Maryland Department, the Court finds that Ms. Jeffries has not sufficiently pled facts evidencing its involvement in the denial of her application for ERAP benefits. In her Sur-Reply, Ms. Jeffries alleges that she applied for ERAP benefits through both Prince George's County and the Maryland Department. ECF No. 51, at 1. However, her Amended Complaint evidences interactions with only Prince George's County. *See, e.g.*, ECF No. 1-4, at 1 (addressing letter for reconsideration to location of Prince George's County Department of Housing and Community Development); ECF No. 4, at 2 (stating that "county ERAP representatives" told Ms. Jeffries there was no appeals process). Thus, the Court will grant the Maryland Department's Motion to Dismiss pursuant to Rule 12(b)(6).

II.     **Rule 12(b)(1)**

Prince George's County also moves to dismiss Ms. Jeffries's Amended Complaint for lack of subject matter jurisdiction pursuant to Rule 12(b)(1). Prince George's County argues that because it is a Maryland local government agency and Ms. Jeffries is a Maryland resident, Ms. Jeffries can claim only federal question jurisdiction, but that her allegations are insufficient to establish a federal cause of action and none of the statutes or regulations she cites provide subject matter jurisdiction. *See* ECF No. 44-1, at 4–5. Because, as discussed above, Ms. Jeffries

sufficiently alleges that Prince George's County violated her right to procedural due process under the Federal Constitution, she has made a plausible claim under 42 U.S.C. § 1983, which falls squarely within the Court's federal question jurisdiction. *See, e.g.*, *Smith v. Travelpiece*, 31 F.4th 878, 882–83 (4th Cir. 2022) ("Section 1983 provides a federal cause of action to redress constitutional harms committed under color of state law."); *Avery v. County of Burke*, 660 F.2d 111, 114 (4th Cir. 1981) (stating that a county may be liable for constitutional violations under § 1983 (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978))).

Additionally, Prince George's County argues that Ms. Jeffries's Amended Complaint should be dismissed because she has failed to exhaust her administrative remedies. ECF No. 44-1, at 8. Viewing the facts in the light most favorable to Ms. Jeffries, her Amended Complaint indicates, as discussed above, that Prince George's County has not facilitated an appeals process for her claim, despite Ms. Jeffries's requests. Regardless, plaintiffs are generally not required to exhaust administrative remedies before bringing an action under § 1983. *See, e.g.*, *Talbot v. Lucy Corr Nursing Home*, 118 F.3d 215, 219 (4th Cir. 1997); *see also Jemal's Fairfield Farms, LLC v. Prince George's County*, 319 F. Supp. 2d 618, 626 (D. Md. 2004) ("Generally, state law requirements that administrative remedies first be exhausted are inapplicable to § 1983 actions to remedy constitutional violations." (citing, *inter alia*, *Patsy v. Bd. of Regents*, 457 U.S. 496 (1982))). While exceptions to this general rule exist where Congress explicitly or implicitly requires exhaustion of state administrative remedies, *see Talbot*, 118 F.3d at 219, Congress has not explicitly required such exhaustion with respect to emergency rental assistance under 15 U.S.C. § 9058a, and there is no evidence of an implicit exhaustion requirement, *see, e.g.*, *id.* at 220 (finding no implicit exhaustion requirement even where the relevant statute and implementing regulations contained some state administrative review procedures, noting "the strong presumption

11

against requiring the exhaustion of state administrative remedies in § 1983 suits"). For these reasons, the Court will deny Prince George's County's Motion to Dismiss pursuant to Rule 12(b)(1).

### III. Governmental Immunity

Finally, Prince George's County argues that even if Ms. Jeffries has stated a claim for relief, her claim is barred by governmental immunity. ECF No. 44-1, at 6. Specifically, Prince George's County interprets Ms. Jeffries's Amended Complaint as "asserting a simple state law-based negligence claim," *id.*, against which the County is shielded from liability under the Maryland doctrine of governmental immunity and the Maryland Local Government Tort Claims Act, *see id.* at 6–7. However, the Court reads Ms. Jeffries's Amended Complaint as asserting a claim under § 1983 for violation of her right to procedural due process, and Prince George's County is not immune from suit under § 1983. *See, e.g.*, *Burtnick v. McLean*, 76 F.3d 611, 613 (4th Cir. 1996) ("[T]he Supreme Court has left no doubt that municipalities and local governments are not entitled to immunity from suits brought under section 1983." (quoting *Berkley v. Common Council of Charleston*, 63 F.3d 295, 296 (4th Cir. 1995) (en banc))). Thus, the Court will deny Prince George's County's Motion to Dismiss on this basis as well.

### CONCLUSION

For the reasons stated above, Defendant Maryland Department of Housing and Community Development's Motion to Dismiss, ECF No. 46, is, hereby, granted, and Defendant Prince George's County Department of Housing and Community Development's Motion to Dismiss, ECF No. 44, is, hereby, denied. The parties shall file a Joint Proposed Scheduling Order within fourteen days.

So ordered.

Date:  October 23, 2023                                         _____/s/_____
                                                                Ajmel A. Quereshi
                                                                U.S. Magistrate Judge