# UNITED STATES DISTRICT COURT
# DISTRICT OF MARYLAND

MONICA JEFFRIES,                              *

               Plaintiff            *

          v.                          *        Civil Case No. 8:22-526-AAQ

PRINCE GEORGE'S COUNTY, *et al*,      *

             Defendants.         *

## MEMORANDUM OPINION AND ORDER

This is a case involving a denial of emergency rental assistance made available under the Coronavirus Economic Stabilization Act, 15 U.S.C. § 9001, *et seq*. Specifically, Plaintiff Monica Jeffries brought suit against Defendant Prince George's County, Maryland, under 42 U.S.C. § 1983 for violation of her procedural due process rights in the review of her application for rental relief. Pending before the Court are three motions: Plaintiff's Motion for Leave to Amend the Complaint,[1] ECF No. 81; Defendant's Motion for Summary Judgment, ECF No. 89; and Defendant's Motion for a Prefiling Injunction, ECF No. 90. For the reasons explained below, the Court denies Plaintiff's Motion for Leave to Amend because it was made well past the applicable deadline, prejudices Defendant, and would be futile. The Court grants summary judgment to Defendant because Plaintiff has not established a protected property interest in the rental relief program. Finally, the Court denies Defendant's Motion for a Prefiling Injunction, but warns Plaintiff that pursuing duplicative litigation in the future may result in the imposition of sanctions.

---

[1] Plaintiff's Motion is titled "Plaintiff's Request to Add an Additional Claim Against Defendants [for] 'Uttering.'" ECF No. 81, at 1. Therein, Plaintiff seeks to add a new claim based on Defendant's alleged communication of false information to governmental agencies. *See generally id.* In substance, the Motion seeks to amend the Complaint; thus, the Court interprets the Motion as such.

**BACKGROUND**

The Court begins with a brief overview of the relevant statutory scheme before recounting

the factual and procedural history.

**I. Statutory Scheme**

During the COVID-19 pandemic, Congress enacted the Coronavirus Aid, Relief, and

Economic Security ("CARES") Act, which provided economic benefits to qualified applicants.

*See* 15 U.S.C. § 9058a; ECF No. 55, at 2.  Of relevance to this case, the relief package allocated

certain funds to states and local governments to assist with housing costs, including rent, for the

purpose of ensuring housing stability during the pandemic.  *See* 15 U.S.C. § 9058a(b).  Such

assistance was limited to "eligible households," meaning:

> a household of 1 or more individuals who are obligated to pay rent on a
> residential dwelling and with respect to which the eligible grantee involved
> determines--
>
>> (i) that 1 or more individuals within the household has
>>
>>> (I) qualified for unemployment benefits or
>>>
>>> (II) experienced a reduction in household income, incurred
>>> significant costs, or experienced other financial hardship
>>> due, directly or indirectly, to the novel coronavirus disease
>>> (COVID-19) outbreak, which the applicant shall attest in
>>> writing;
>>
>> (ii) that 1 or more individuals within the household can demonstrate
>> a risk of experiencing homelessness or housing instability, which
>> may include--
>>
>>> (I) a past due utility or rent notice or eviction notice;
>>>
>>> (II) unsafe or unhealthy living conditions; or
>>>
>>> (III) any other evidence of such risk, as determined by the
>>> eligible grantee involved; and

(iii) the household has a household income that is not more than 80 percent of the area median income for the household.

*Id.* § 9058a(k)(3)(A). Congress specified that area median income was to be "determined by the Secretary of Housing and Urban Development," and that assessments of income were based on "the household's total income for calendar year 2020" or "the household's monthly income at the time of application for such assistance." *Id.* at § 9058a(k)(1), (k)(3)(C). For the year 2020, the United States Department of Housing and Urban Development assessed the area median income for Prince George's County to be $126,000. U.S. Dep't of Hous. & Urb. Dev., *Dataset: Thirty Percent Income Limits*.[2] Eighty percent of that median amounts to a household income limit of $100,800.

## II. Factual Background

From 2017 to 2022, Plaintiff Monica Jeffries resided at 414 Winslow Avenue, in Oxon Hill Maryland. ECF No. 89-16, at 5, 7. Plaintiff has two sons: Fred and Jeremy Jones. ECF No. 86-16, at 5; ECF No. 86-17, at 8; ECF No. 89-4, at 8. During the COVID-19 pandemic, she experienced financial hardship and sought relief through the CARES Act rent relief program.

On April 9, 2021, Plaintiff first submitted her application to the Prince George's County Emergency Rental Assistance Program ("ERAP") seeking financial assistance for rent and utilities for her home. ECF No. 89-3, at 12; ECF No. 89-4, at 5. On July 1, 2021, Evelyn Harvey-Anderson, an administrator for the program and Defendant's employee, rejected Plaintiff's application and requested additional supporting documentation to aide her eligibility determination. ECF No. 89-3, at 12, ECF No. 89-4, at 5-6. In particular, Ms. Harvey-Anderson noted that Plaintiff had not submitted a copy of her lease. ECF No. 89-3, at 12.

---

[2] Available at https://perma.cc/RM9N-579A.

Plaintiff subsequently uploaded additional documentation and resubmitted her application, seeking rental assistance from March 2021 through July 2021.  *Id.* at 4, 13.  In the application, she identified an individual named Robert Peralta as her landlord, but again did not include a copy of her lease.  *Id.* at 5-6, 13.  Later that month, Ms. Harvey-Anderson deemed the application ineligible for assistance, and once again requested additional documentation.  *Id.*  By the beginning of July 2021, Plaintiff had uploaded several documents to Defendant's online application platform, including:

- A purported eviction notice dated April 11, 2021, addressed to Plaintiff and Jeremy Jones, indicating failure to pay rent on the home.  ECF No. 89-5.  This document identified Robert Peralta and Fred Jones as the landlords, and further stated that "[t]enants sub-lease from Fred Jones."  *Id.* at 2-3.

- A signed declaration from Plaintiff stating that she was unable to pay rent and would likely become homeless if she were evicted.  ECF No. 89-6.[3]

- A written attestation of Plaintiff's eligibility for the program, in which she indicated that she was experiencing financial hardship and identified herself as the sole resident of 414 Winslow Road.  ECF No. 89-7, at 2-3.

Nonetheless, reviewers determined that they required more information, which Plaintiff provided. *See* ECF No. 89-3, at 12-14; ECF No. 89-4, at 6.

At some point, Plaintiff submitted Jeremy Jones's W-2 tax form which listed 414 Winslow Road as his primary address.  ECF No. 89-8.  She also provided an updated attestation of eligibility, listing Jeremy Jones as a member of her household, and supplied tax documents establishing her personal income.  ECF No. 89-11, at 4; ECF No. 89-9.

On August 3, 2021, Ms. Harvey-Anderson determined Plaintiff was ineligible for ERAP because she exceeded the permissible income limit established by statute.  ECF No. 89-4, at 3;

---

[3] This document includes two dates: February 6, 2021 and July 1, 2021.  ECF No. 89-6, at 3.  The July 1 date is labeled "updated."  *Id.*

ECF No. 89-3, at 14.  As previously explained, the CARES Act prohibited provision of rental assistance to households with income exceeding eighty percent of the area median income, meaning that for Prince George's County, any household exceeding $100,800 in income was ineligible for relief.  *See* 15 U.S.C. § 9058a(k)(3)(A)(iii).  Ms. Harvey-Anderson calculated Plaintiff's household income by adding her Social Security benefits, Supplemental Security benefits, and Jeremy Jones' yearly income—the sum of which exceeds $100,800.  ECF No. 89-4, at 3.

Plaintiff objected to Defendant's determination and sought further review for her application, claiming that she lived alone.  *Id.* at 5-6; ECF No. 89-12, at 4-5.  At that point in time, applicants for ERAP had the option to pursue an internal review of their application by a supervisor.  ECF No. 89-4, at 6.  Accordingly, a supervisor, Ms. Tamika Gauvin, re-reviewed Plaintiff's application.  *Id.* at 6-7.  Ms. Gauvin reached the same conclusion as Ms. Harvey-Anderson.  ECF No. 89-12, at 2.  Nevertheless, Ms. Gauvin provided Plaintiff with an opportunity to clarify certain facts regarding her eligibility.  *Id.*  Specifically, Ms. Gauvin instructed Plaintiff to provide documents establishing that her monthly income throughout 2021 fell below the statutory limit, or to submit an attestation from her property manager that she was the only person living at the property.  *Id.*

In response, Plaintiff submitted a rental agreement between herself and an individual named Karl Wilson.  ECF No. 89-14.  In that document, Mr. Wilson stated that Jeremy Jones had recently stayed in the home for a period of time but that he did not live there, and that if Plaintiff could not pay rent she could not remain in the home.  *Id.*  Ms. Gauvin further obtained documents Jeremy Jones submitted in a state court proceeding listing 414 Winslow Road as his address.  ECF No. 89-4, at 7.  Based on this conflicting information, "Ms. Gauvin determined the information in

[Plaintiff's] application was fraudulent" and again denied the application.  *Id.*  On September 7, 2021, Ms. Gauvin informed Plaintiff that the second review of her application had been completed, and the same conclusion had been reached: she was ineligible for ERAP.  ECF No. 89-15, at 2.

### III. Procedural Background

Plaintiff filed the Complaint in the present lawsuit on March 4, 2022, and subsequently filed a supplement to her Complaint several months later.  ECF Nos. 1, 4.  Together, the two filings constitute an Amended Complaint.  ECF No. 55, at 3.  In April 2023, Defendant filed a Motion to Dismiss the Amended Complaint, which the Court denied.  ECF No. 55.[4]  Accordingly, the case proceeded to discovery.  Plaintiff has represented herself pro se throughout the litigation.

During her deposition, Plaintiff clarified that Robert Peralta owned the 414 Winslow Road Property.  ECF No. 89-16, at 5.  She further stated that she was not the lease holder, but rather her son Fred Jones and his wife Janice had signed the lease.  *Id.* at 5-6, 14 (Plaintiff stating "I was not a lease holder").  An official lease for the property signed in November 2020, ECF No. 86-18, listed Robert Peralta as the landlord and Fred and Janice Jones as the tenants.  *Id.* at 2.  The document further clarified that the property could not be subleased absent written consent from the landlord.  *Id.* at 3.

On September 5, 2024, Plaintiff filed a Motion seeking to amend her Complaint and add a new claim against Defendant for defamation, which she describes as the act of "uttering."  ECF No. 81; ECF No. 88, at 3 ("Defendant clearly defamed and uttered and assassinated plaintiff['s] character.").  In her Motion, Plaintiff alleges that Defendant informed "other government agencies," including the office of Congressman Anthony Brown, that she "had an 'appeals

---

[4] In her initial Complaint, Plaintiff also named the Maryland Department of Housing and Community Development as a Defendant.  ECF No. 1, at 1.  The Maryland Department filed a Motion to Dismiss, ECF No. 46, which the Court granted, ECF No. 55, at 12.

hearing'" as part of the review of her ERAP application, and that this constitutes "erroneous and false" misinformation.  *Id.* at 1-2; ECF No. 88, at 2.  During a Discovery Hearing held on September 19, 2024, Plaintiff stated that she learned of these statements in January 2022. Defendant opposed the Motion at the hearing and later filed a written Opposition, arguing that amendment would be prejudicial and futile.  ECF No. 87.  Plaintiff submitted an additional Reply, ECF No. 88, in which she clarified that the alleged defamation is ongoing, but that she "has no idea when or how or why Defendant[] continue[s] to defame plaintiff's character."  ECF No. 88, at 4-5.

At the beginning of November 2024, Defendant filed a Motion for Summary Judgment and a Motion requesting a permanent prefiling injunction against Plaintiff on the grounds that she is a vexatious litigant.  ECF No. 89; ECF No. 90.  The Court mailed a Notice shortly thereafter advising Plaintiff of her right to respond to the Motion for Summary Judgment and warned her of the consequences that could result from failure to respond.[5]  ECF No. 91.  The deadline for Plaintiff's written opposition having long passed, each Motion is now ripe for decision.

## STANDARD OF REVIEW

The Court will grant a motion for summary judgment only if there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  If there are factual issues "that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party," then the Court must deny

---

[5] Accordingly, Plaintiff has been advised of her right to file responsive material to the Motion, and she has been alerted to the fact that failure to respond may result in the entry of judgment against her.  *See Roseboro v. Garrison*, 528 F.2d 309, 310 (4th Cir. 1975) (holding that a court must warn pro se plaintiffs that failure to oppose a motion can result in dismissal).

the request for summary judgment. *Anderson*, 477 U.S. at 250; *see also Pulliam Inv. Co. v. Cameo Props.*, 810 F.2d 1282, 1286 (4th Cir. 1987); *Morrison v. Nissan Motor Co.*, 601 F.2d 139, 141 (4th Cir. 1979); *Stevens v. Howard D. Johnson Co.*, 181 F.2d 390, 394 (4th Cir. 1950). The moving party bears the burden of showing that there is no genuine issue of material fact. Fed. R. Civ. P. 56(a); *Pulliam*, 810 F.2d at 1286 (citing *Charbonnages de France v. Smith*, 597 F.2d 406, 414 (4th Cir. 1979)).

When ruling on a motion for summary judgment, the court must draw all reasonable inferences in favor of and construe the facts in the light most favorable to the nonmoving party. *See Tinsley v. First Union Nat'l Bank*, 155 F.3d 435, 438 (4th Cir. 1998). "A party who bears the burden of proof on a particular claim must factually support each element of his or her claim." *Scott v. United States*, No. PJM-06-2777, 2007 WL 3020185, at *1 (D. Md. Feb. 23, 2007). Thus, on those issues on which the nonmoving party will have the burden of proof, it is his or her responsibility to confront the motion for summary judgment with an affidavit or other similar evidence. *See Anderson*, 477 U.S. at 256–57.

A nonmoving party's "failure to respond" to a motion for summary judgment "does not fulfill the burdens imposed on moving parties by Rule 56." *Custer v. Pan Am. Life Ins. Co.*, 12 F.3d 410, 416 (4th Cir. 1993). Accordingly, "the court, in considering a motion for summary judgment, must review the motion, even if unopposed, and determine from what it has before it whether the moving party is entitled to summary judgment as a matter of law." *Id.* This duty is underscored in "section (e) of the rule" which provides "if the adverse party does not so respond, summary judgment, *if appropriate*, shall be entered against the adverse party." *Id.* (quoting Fed. R. Civ. P. 56(e)) (emphasis in original). Thus, "notwithstanding [a] plaintiff's failure to respond, [the Court] must first determine whether the evidence that [the] defendant has submitted in support

of the Motion 'shows that there is no genuine dispute as to any material fact,'" then conclude whether "the movant is entitled to judgment as a matter of law." *Ogunsula v. Warrenfeltz*, No. ELH-20-2568, 2024 WL 2155054, at *8 (D. Md. May 14, 2024) (quoting Fed. R. Civ. P. 56(a)).

Courts in the Fourth Circuit apply these standards less stringently to pleadings filed by pro se plaintiffs and recognize a duty to construe such pleadings "liberally." *E.g. DePaola v. Clarke*, 884 F.3d 481, 486 (4th Cir. 2018); *Martin v. Duffy*, 977 F.3d 294, 298 (4th Cir. 2020) (explaining courts must "interpret [pro se filings] 'to raise the strongest arguments that they suggest'" (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)).

## ANALYSIS

## I.    Motion for Leave to Amend

Under Federal Rule of Civil Procedure 15(a), a party has ample opportunity to amend a pleading as a matter of course at the start of a litigation. Fed. R. Civ. P. 15(a) (explaining that a party may amend its pleading once as a matter of right within 21 days of service, or within 21 days of service of an applicable motion under Rule 12). "In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave." *Id.* at (a)(2). The "grant or denial of an opportunity to amend is within the discretion of the [d]istrict [c]ourt," *Foman v. Davis*, 371 U.S. 178, 182 (1962), and Rule 15 directs courts to "freely give leave when justice so requires," Fed. R. Civ. P. 15(a)(2). *See also Galustian v. Peter*, 591 F.3d 724, 729 (4th Cir. 2010) (explaining the Fourth Circuit's policy is to "liberally allow amendment"). Accordingly, leave to amend should be denied only if "(1) the amendment would be prejudicial to the opposing party; (2) there has been bad faith on the part of the moving party; or (3) the amendment would have been futile." *Drager v. PLIVA USA, Inc.*, 741 F.3d 470, 474 (4th

Cir. 2014) (quoting *Scott v. Family Dollar Stores, Inc.*, 733 F.3d 105, 121(4th Cir. 2013)) (internal quotation marks omitted).  Plaintiff may not amend her Complaint at this late stage of the case because the proposed amendment prejudices Defendant and would be futile.

"Whether an amendment is prejudicial will often be determined by the nature of the amendment and its timing." *Laber v. Harvey*, 438 F.3d 404, 427 (4th Cir. 2006).  An amendment raising "a new legal theory" that requires additional discovery "offered shortly before . . . trial" is likely prejudicial, *id.* (quoting *Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 509 (4th Cir. 1986)), whereas an amendment adding "an additional theory of recovery to the facts already pled" that is "offered before any discovery has occurred" is not, *id.*  Although a court cannot deny leave to amend solely on the basis of delay, "the further the case [has] progressed, . . . the more likely it is that the amendment will prejudice the defendant." *Id.* at 427.

Allowing Plaintiff to amend her Complaint would result in additional discovery and, thus, prejudice Defendant.  Plaintiff did not file her Motion to add a new claim until September 5, 2024—well past the April 24, 2024, deadline for amended pleadings.  ECF No. 81; ECF No. 59.  At the time of filing, the parties were close to the end of discovery and summary judgment briefing was imminent.  Plaintiff has not explained why she could not have raised the claim earlier.[6]  The

---

[6] In her Reply, Plaintiff seemingly argues that the claim could not have been raised prior to the April deadline because Defendant had not complied with discovery obligations.  ECF No. 88, at 4.  However, the piece of discovery she takes issue with—the alleged belated production of an affidavit from Trisha Woods—was written *in response to* Plaintiff's Motion for Leave to Amend, not at an earlier stage of litigation.  *See* ECF No. 87-1 (Affidavit of Trisha Woods).  Thus, Defendant could not have produced the document any earlier.  Additionally, Defendant offered the affidavit to support its argument that amendment would be futile because Plaintiff had not submitted a claim letter to the county "as a prerequisite to the institution of a[] lawsuit[] involving a tort claim[]" against the County, as is required by the Local Government Torts Claims Act.  ECF No. 87, at 3; ECF No. 87-1.  Finally, even if this were not the case, Plaintiff alleges that the document establishes that she never received a hearing, not that the County had been making statements stating the contrary.  Thus, the document fails to support Plaintiff's argument that she

proposed new claim for "uttering" argues that Defendant defamed Plaintiff when it sent documents to other government agencies "[i]ndicating th[at] Plaintiff had an 'appeals hearing' or some other kind of hearing" with respect to her ERAP application.  ECF No. 81, at 1.  During a September 19, 2024, hearing, Plaintiff stated that she became aware of the alleged defamatory statements in January 2022.  Additionally, an attachment Plaintiff provided in support of her Motion to Compel establishes that she was aware of these statements by May 2022, at the latest.  *See* ECF No. 79-2, at 3 (correspondence from Congressman Anthony Brown's Office informing Plaintiff that Defendant had informed them her ERAP application had been denied, and that decision was upheld on appeal).  Accordingly, despite statements in her Reply in Support of her Motion for Leave to Amend suggesting she is unaware of when the statements were made, the record establishes her knowledge by at least the Summer of 2022.  ECF No. 88, at 5.  Further, although Plaintiff stated during the hearing that no additional discovery would be required, her Motion states otherwise. ECF No. 81, at 3 ("Plaintiff also requests an order of the court to make Defendant[] reach out to those parties that were misinformed . . . Plaintiff would also request that Defendant[] [is] 'ordered' to fulfill Plaintiff['s] Discovery requests in a timely manner."); ECF No. 88, at 2 ("Plaintiff has continued to summon and request Discovery documents, that the defendant[] forwarded or otherwise communicated to those relevant agencies" but indicating no such documents had been produced), 5 (requesting additional documentation from Defendant).

In addition to being prejudicial, the amendment would be futile.  An amendment would be futile when "the proposed amendments could not withstand a motion to dismiss," meaning the allegations, accepted as true, fail to state a claim for relief.  *Perkins v. United States*, 55 F.3d 910,

---

only learned of Defendant's statement in September of 2024.  For all these reasons, this argument offers no explanation for Plaintiff's failure to raise the defamation claim at an earlier date.

917 (4th Cir. 1995); *Martin*, 858 F.3d at 248.  In Maryland, defamation is a common-law tort subject to a one-year statute of limitations, and the claim accrues either at the time of publication or on the date when a plaintiff knows of, or reasonably could know of, the existence of the statements.  *Indep. Newspapers, Inc. v. Brodie*, 966 A.2d 432, 448 (Md. 2009); *Interphase Garment Sols., LLC v. Fox Television Stations, Inc.*, 566 F. Supp. 2d 460, 464 (D. Md. 2008) (citing Md. Code Ann. Cts. & Jud. Proc. § 5-515).  As previously explained, Plaintiff became aware of the relevant statements by May 2022 at the latest, and her filings suggest the statements were made prior to the start of this case.  ECF No. 79-2, at 3; *see* ECF No. 88, at 5 (stating Plaintiff became aware of the statements "sometime during Discovery").  Her Motion was made almost two years later, far exceeding the one-year time limit.  Accordingly, the proposed amendment would be futile.

Therefore, the Court denies Plaintiff's Motion for Leave to Amend.

## II.    Motion for Summary Judgment

Defendant argues that Plaintiff cannot demonstrate a material dispute of fact as to whether she has standing and whether Defendant violated her procedural due process rights.  Although Plaintiff has standing to assert her claim, she has not established a protected property interest to which due process rights attach.

### A.  Plaintiff Has Standing.

"[F]ederal courts must determine whether they have subject-matter jurisdiction over a claim before proceeding to address its merits."  *Stop Reckless Econ. Instability Caused by Democrats v. Fed. Election Comm'n*, 814 F.3d 221, 228 (4th Cir. 2016).  Article III of the Constitution limits the jurisdiction of federal courts to "actual cases or controversies," such that plaintiffs "must establish that they have standing to sue."  *Clapper v. Amnesty Int'l USA*, 568 U.S.

398, 408 (2013) (first quoting *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 341 (2006), then

quoting *Raines v. Byrd*, 521 U.S. 811, 818 (1997)).  To satisfy the standing requirement, a plaintiff

must show that they have "(1) suffered an injury-in-fact, (2) that is fairly traceable to the

challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial

decision."  *Hutton v. Nat'l Bd. Of Exam'rs in Optometry, Inc.*, 892 F.3d 613, 619-20 (4th Cir.

2018) (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016)).  At the summary judgment

stage, "plaintiffs are not entitled to 'rest on . . . mere allegations, but must set forth by affidavit or

other evidence specific facts, which for purposes of the summary judgment motion will be taken

to be true."  *Beck v. McDonald*, 848 F.3d 262, 270 (4th Cir. 2017) (quoting *Lujan v. Defs. of

Wildlife*, 504 U.S. 555, 561 (1992)).

　　"[I]n order to satisfy the injury-in-fact requirement, plaintiff[] must demonstrate that [she]

'suffer[ed] an invasion of a legally protected interest which is concrete and particularized, as well

as actual or imminent.'"  *S. Blasting Servs., Inc. v. Wilkes Cnty.*, 288 F.3d 584, 595 (4th Cir. 2002)

(quoting *Friends of the Earth, Inc. v. Gaston Copper Recycling Corp.*, 204 F.3d 149, 154 (4th Cir.

2000) (en banc)).  Plaintiff's alleged injury—the manner in which Defendant reviewed her ERAP

application—is concrete.  Defendant reviewed her application for benefits in 2020 and 2021.  ECF

No. 89-3 (Plaintiff's application);  ECF No. 89-12 (email exchanges regarding Plaintiff's

application);  ECF No. 89-15 (same).  This is sufficiently particularized—it is not the type of

hypothetical or ungrounded theory that would run afoul of Article III.  *Compare S. Blasting Servs.,

Inc.*, 288 F.3d at 595 (concluding plaintiffs, bringing a procedural due process claim arising out of

a permitting process, had not suffered injury in fact because they "never even applied for a permit")

*with Doe v. Va. Dep't of State Police*, 713 F.3d 745, 755 (4th Cir. 2013) (finding sufficient injury-

in-fact for a procedural due process claim where defendant had reclassified plaintiff as a sexually

violent offender "without affording her a procedure by which to challenge these actions"). Plaintiff's injury is traceable to Defendant's practice of reviewing applications and would be remedied if Plaintiff prevailed and Defendant adopted different procedures. "Nothing more is needed to establish standing . . . [n]or does the ultimate validity of [Plaintiff's] constitutional claim[] bear on [her] ability to bring [it]." *PEM Entities v. Cnty. of Franklin*, 57 F.4th 178, 182 (4th Cir. 2023); *see id.* (holding Plaintiff's "inability to obtain water and sewer services on terms to which it claims it is entitled is an injury in fact that is fairly traceable to the challenge ordinance" establishing the licensing scheme "and would likely be remedied if [Plaintiff] prevailed in th[e] suit").

Defendant's argument conflates the merits of the due process claim with the threshold inquiry of standing. Defendant argues that "Plaintiff suffered no injury, as the CARES Act limited benefits to 'individuals who are obligated to pay rent,'" and that it is undisputed that Plaintiff "had no obligation to pay rent." ECF No. 89, at 13 (quoting 15 U.S.C. § 9058a(k)(3)(A)). As the Fourth Circuit has explained, "[i]t is important to avoid 'confus[ing] weakness on the merits with absence of Article III standing.'" *PEM Entities*, 57 F.4th at 182 (quoting *Davis v. United States*, 564 U.S. 229, 249 n.10 (2011)). At its core, standing doctrine ensures that a legal dispute "will be resolved . . . in a concrete factual context conducive to a realistic appreciation of the consequences of judicial action." *Valley Forge Christian Coll. v. Am. United for Separation of Church & State, Inc.*, 454 US. 464, 472 (1982). As explained in the Court's prior opinion, "courts have drawn a distinction between 'the right to receive a benefit' and 'the right to fair decision-making before the benefit is denied.'" ECF No. 55, at 7 (quoting *Mallette v. Arlington Cnty. Emps.' Supplemental Ret. Sys. II*, 91 F.3d 630, 637 (4th Cir. 1996)). Accordingly, a plaintiff may bring a claim for due process "even if she is ultimately found to be ineligible for the benefit." *Id.*; *see also Mallette*, 91

F.3d at 637 (holding a plaintiff had "a property interest in her potential eligibility for disability retirement benefits, whether or not she ultimately prevail[ed] on the merits"). This same principle holds true for purposes of standing. The Fourth Circuit has made clear that a plaintiff can meet the standard for Article III standing even if they ultimately lack a protected property interest for purposes of a due process claim. *PEM Entities LLC*, 57 F.4th at 182. This is for good reason. If Defendant's logic were followed to its end, and "a plaintiff's standing depended upon whether [s]he succeeds on the merits, 'then every unsuccessful plaintiff will have lacked standing in the first place.'" *Covenant Media of S.C., LLC v. City of North Charleston*, 493 F.3d 421, 429 (4th Cir. 2007) (quoting *White Tail Park, Inc. v. Stroube*, 413 F.3d 451, 461 (4th Cir. 2005)).

**B. Plaintiff Lacks a Cognizable Property Interest to Support Her Due Process Claim.**

"To establish a procedural due process violation under § 1983, plaintiff[] must show (1) that [she] w[as] deprived of a cognizable liberty or property interest (2) through some form of state action (3) with constitutionally inadequate procedures." *Todman v. Mayor & City Council of Baltimore*, 104 F.4th 479, 487 (4th Cir. 2024). "To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it . . . instead, [they] must have a legitimate claim of entitlement to it." *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972). Statutorily created benefits—like disability- and health-related benefits—can give rise to a claim of entitlement when the statute meaningfully limits "the discretion of decisionmakers" such that once an applicant meets "particularized eligibility criteria," the decisionmaker must award the relevant benefits. *Malette*, 91 F.3d at 634-35; ECF No. 55, at 6-7 (collecting cases). Moreover, a plaintiff must also establish eligibility by showing membership within the "class of individuals whom the [] program was intended to benefit." *Mallette*, 91 F.3d at 636 (quoting *Ressler v. Pierce*, 692 F.2d 1212, 1215 (9th Cir. 1982)), 637 (explaining that "[e]ligible applicants"

for retirements benefits were owed due process where a state statute created a "legitimate expectation of receiving benefits").

As the Court noted in its prior opinion, ECF No. 55, at 7-8, the CARES Act required that state and local governmental units "provide financial assistance and housing stability services to eligible households," and defined the specific criteria for eligibility.  15 U.S.C. § 9058a(b)(1)(A), (c)(1), (k)(3).  The statutory scheme provides little discretion to administrators of the program. *See id.*; ECF No. 55, at 8.  It accordingly creates an expectation of entitlement for the individuals eligible for the program.

Nonetheless, the record, viewed in the light most favorable to Plaintiff, establishes that she lacked any obligation to pay rent and was thus outside "class of individuals whom the [] program was intended to benefit." *Mallette*, 91 F.3d at 636 (quoting *Ressler*, 692 F.2d at 1215).[7]  Only one lease agreement for 414 Winslow Road was produced in discovery; it covered a period beginning January 1, 2020, through June 30, 2020—not the 2021 timeframe for which Plaintiff sought benefits.  ECF No. 89-18, at 2. The lease lists Robert Peralta as the landlord, and Fred Jones and his wife Janice as tenants.  *Id.*  It further specifies that the tenant "may not sublease PREMISES or assign this Lease without the LANDLORD's prior written consent."  *Id.* at 3.

During Plaintiff's deposition, she testified that Robert Peralta owned the property, that she had not signed a lease with him, and that her son Fred Jones and his wife signed the lease.  ECF

---

[7] Defendant also argues that even if Plaintiff had an obligation to pay rent, she was still not eligible for ERAP because her household income exceeded the permissible limit.  ECF No. 89-1, at 12-13. That assertion does not satisfy the summary judgment standard because the record contains conflicting evidence regarding Jeremy Jones's place of residence.  *See, e.g.* ECF No. 89-11, at 4 (attestation of eligibility listing Jeremy Jones as household member); ECF No. 89-12, at 4 (email in which Plaintiff states "I live alone"); ECF No. 89-17, at 7 (response to interrogatory in which Plaintiff stated "Jeremy Jones came to stay at the home for a short time after he was shot in the knee . . . after [his] recovery he went back to his apartment"); ECF No. 89-8 (Jeremy Jones's W-2 listing 414 Winslow Road as his address).

No. 89-16, at 5; *see also* ECF No. 89-17, at 7 (stating, in response to an interrogatory that Plaintiff "NEVER signed a lease agreement"), 6 ("Monica Jeffries [was] not [a] lease holder[] for the home"). She further stated that Fred paid the rent to Mr. Peralta, and that three individuals—herself, her late brother, and Jeremy—"supplemented" or contributed to the rent. ECF No. 89-16, at 6, 11; ECF No. 89-17 at 10 ("Plaintiff['s] son Fred Jones always paid the rent to Peralta. Plaintiff is not aware how [Fred] Jones paid the rent. Plaintiff[']s brother[] and . . . son supplemented the rent each month . . . Plaintiff also contributed to the rental payments"). "[R]ent was always paid timely and [in] accordance with the guidelines set out between all the parties." ECF No. 89-17, at 10. Plaintiff's statements in her deposition are reiterated in her responses to Defendant's interrogatories. *See generally id.*

Although there is one ambiguous reference to a potential sub-lease in the record, it is not sufficiently concrete to create a genuine dispute of material fact. *See Preston v. Mountainside Transport, Inc.*, 795 F. Supp. 159, 160 (D. Md. 1992) ("If the evidence favoring the non-moving party is 'merely colorable, or is not significantly probative, summary judgment may be granted'" (quoting *Anderson*, 477 U.S. 249-50)). Plaintiff submitted a document labeled "Notice of Eviction" to Defendant with her ERAP application. ECF No. 89-5. Addressed to Plaintiff and Jeremy Jones and signed by Fred Jones in April 2021, it describes Plaintiff and her son Jeremy as "[t]enants" that "sub-lease" the property and cites a March 7, 2016, lease that neither party has produced. *Id.* at 2. This passing reference provides no information as to whether such an arrangement was in place during the time relevant to Plaintiff's ERAP application; nor does it alone create a genuine dispute of fact in light of Plaintiff's repeated and consistent testimony that she was never party to a lease for the 414 Winslow Road property. ECF No. 89-16, at 5-6, 11; ECF No. 89-17, at 6-7, 10. "A party cannot create a genuine dispute of material fact

through . . . [a] compilation of inferences." *Greer v. Trinity Fin. Servs., LLC*, 607 F. Supp. 3d 635, 639 (D. Md. 2022). The purported Notice of Eviction is not the type of "specific, non-speculative evidence" required to defeat a summary judgment motion once Defendant "carried [its] initial burden of demonstrating the absence of any genuine issue of material fact regarding" the existence of a legal obligation to pay rent. *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003). As noted, Plaintiff not only failed to present any evidence in response to Defendant's Motion but provided no response at all.

The record thus establishes that Fred Jones bore the obligation to pay the rent on the 414 Winslow Road property, and that while Plaintiff contributed money to Fred Jones, she was not legally obligated to do so. Accordingly, Plaintiff's due process claim fails because she lacks a cognizable property interest subject to due process protections. Because "[i]t is the 'affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial,'" the Court will grant Defendant's motion. *Id.* (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993)).

## III.    Prefiling Injunction

"[T]he All Writs Act, 28 U.S.C. § 1651(a), grants federal courts the authority to limit access to the courts by vexatious and repetitive litigants." *Cromer v. Kraft Foods N. Am., Inc.*, 390 F.3d 812, 817 (4th Cir. 2004). Because the U.S. Constitution "guarantees . . . due process of law and access to the courts," such a severe remedy "must be used sparingly." *Id.* (citing U.S. Const. amend. XIV, § 1). "Indeed, 'use of such measures against a pro se plaintiff should be approached with particular caution' and should 'remain very much the exception to the general rule of free access to the courts.'" *Id.* at 818 (quoting *Pavilonis v. King*, 626 F.2d 1075, 1079 (1st Cir. 1980)). When assessing whether to impose a prefiling injunction

> a court must weigh all the relevant circumstances, including (1) the party's history of litigation, in particular whether [s]he has filed vexatious, harassing, or duplicative lawsuits; (2) whether the party had a good faith basis for pursuing the litigation, or simply intended to harass; (3) the extent of the burden on the courts and other parties resulting from the party's filings; and (4) the adequacy of alternative sanctions.

*Id.* "After balancing these factors, if a court decides that a prefiling injunction is warranted, the court 'must ensure that the injunction is narrowly tailored to fit the specific circumstances at issue.'" *Thomas v. Fulton*, 260 F. App'x 594, 596 (4th Cir. 2008) (quoting *id.* at 819). Finally, "before a judge issues" such a remedy, they "must afford a litigant notice and an opportunity to be heard." *Cromer*, 390 F.3d at 819.

Beginning with the first factor, Plaintiff's history of litigation is voluminous—she has filed more than seventy lawsuits in federal and state court since 2007. ECF No. 90-1, at 1-5 (listing cases). In most, she has represented herself pro se. *Id.* In the past three years, she has filed suit in state court against Robert Peralta at least four times, and against an entity named "American Properties at Andrews" at least five times. *Id.* at 5.[8] On the same day that she filed this suit, Plaintiff filed a lawsuit in this Court against the Consumer Financial Protection Bureau based on the same allegations raised in the present suit, Complaint, *Jeffries v. Consumer Fin. Prot. Bureau*, No. 8:22-cv-527-TDC (D. Md. Mar. 4, 2022), but this Court dismissed her Complaint, without

---

[8] The relevant cases are: *Jeffries v. Am. Props. at Andrews*, No. CAL22-6489 (Prince George's Cnty. Cir. Ct. 2022); *Jeffries v. Am. Props. At Andrews*, No. CAL22-231191 (Prince George's Cnty. Cir. Ct. 2022); *Jeffries v. Am. Props. At Andrews*, No. CAL22-233193 (Prince George's Cnty. Cir. Ct. 2022); *Jeffries v. Peralta*, No. 05-02-00167797-2022 (Prince George's Cnty. Dist. Ct. 2022); *Jeffries v. Peralta*, No. D-05-CV-23-008911 (Prince George's Cnty. Dist. Ct. 2023); *Jeffries v. Peralta*, No. C-16-CV-23-000385 (Prince George's Cnty. Cir. Ct. 2023); *Jeffries v. Am. Props. at Andrews*, No. C-16-CV-23-001455 (Prince George's Cnty. Cir. Ct. 2023); *Jeffries v. Am. Props. at Andrews*, No. C-16-CV-23-5396 (Prince George's Cnty. Cir. Ct. 2023); *Jeffries v. Peralta*, No. C-16-CV-23-005279 (Prince George's Cnty. Cir. Ct. 2023).

prejudice, because the Complaint did not allege any action by the CFPB. *See* Order, *Jeffries v. Consumer Fin. Prot. Bureau*, No. 8:22-cv-527-TDC (D. Md. Aug. 5, 2022) (dismissing Complaint in which Plaintiff "allege[d] that her ERAP application was wrongly denied by the Department of Housing and Community Development"). Many of Plaintiff's prior lawsuits are duplicative, in that they involve the same defendant multiple times. *See id.*, ECF No. 90-1, at 1-5. The first *Cromer* factor thus weighs in favor of imposition of a prefiling injunction. *See Owen-Williams v. Higgs*, DKC-18-439, 2019 WL 448810, at *6 (D. Md. Feb. 5, 2019) (reasoning that "a pattern of repeatedly suing the same or similar parties asserting the same or similar claims" supports imposition of a prefiling injunction).

Although Plaintiff has repeatedly filed suit in this and other courts, her positions in this case have not been taken in bad faith. *See Cromer*, 390 F.3d at 818 (considering whether Plaintiff "had a good faith basis for pursuing the litigation, or simply intended to harass"). The fact that Plaintiff's Complaint survived Defendant's Motion to Dismiss indicates good faith—she sufficiently stated a claim for violation of her procedural due process rights. This lawsuit is not an attempt to re-litigate claims whose merits have already been adjudicated. *See Robinson v. Dep't of Just. Drug Enf't Agency*, No. DKC-16-3850, 2016 WL 9023444, at *2 (D. Md. Dec. 5, 2016) (finding plaintiff lacked a good faith basis for litigation where the same claims had been filed and dismissed repeatedly). At the same time, Defendant suggests that Plaintiff made several misrepresentations to the Court during the course of the litigation. For example, during a hearing held on May 8, 2024, Plaintiff stated she would provide a copy of her son Jeremy's lease to Defendant. Defendant reports that she has failed to do so. Such conduct cuts against a finding of good faith. Considering each of these facts, the second *Cromer* factor is neutral.

Plaintiff's high volume of lawsuits has placed a significant burden on the court and on the parties called to defend them. *Cromer*, 390 F.3d at 818. (considering the burden placed on the court and other parties). Plaintiff has filed at least fourteen lawsuits in the last three years; most have been dismissed. ECF No. 90-1, at 5. These lawsuits require the federal and state court systems, as well as the named defendants, to expend valuable resources addressing the litigation. *Ferebee v. E. Motors Dealership*, No. PWG-17-165, 2017 WL 2973944, at *4 (D. Md. July 12, 2017) (finding a plaintiff's extensive history of litigation created an "undue burden . . . especially given that she often sues one defendant more than once"); *Fonseca v. Am. Red Cross*, RJC-DSC-21-452, 2022 WL 1154757, at *4 (D. Md. Apr. 19, 2022) (same). However, in the cases Plaintiff has pursued in this Court, she "has not made an overwhelming number of frivolous" or repetitive motions. *Fonseca*, 2022 WL 1154757, at *4; *see* Docket, *Jeffries v. Consumer Fin. Prot. Bureau*, No. TDC-22-527 (D. Md.); Docket, *Jeffries v. Prince George's Cnty.*, No. AAQ-22-526 (D. Md.). This factor thus tips slightly in favor of an injunction.

Finally, adequate alternative sanctions are available and preferable in this circumstance. *Cromer*, 390 F.3d at 818 (considering the availability of alternative sanctions). The Court is not aware of any sanctions imposed on Plaintiff until this point. It would be unreasonable to immediately escalate to a remedy as drastic as a prefiling injunction when lesser sanctions—such as warnings and monetary penalties—have not been attempted. This factor thus weighs against an injunction.

"Plaintiff's pro se status compels the Court to proceed with 'particular caution' in deciding whether to limit [her] access to the courts." *Okudo v. SW Belair Edison LLC*, No. JKB-21-1269, 2021 WL 4391264, at *4 (D. Md. Sept. 24, 2021) (quoting *Cromer*, 390 F.3d at 818). Plaintiff has not been warned of the consequences of Defendant's motion, nor has she had an opportunity

to be heard on the issue of a prefiling injunction.  Thus, although some factors weigh in favor of an injunction, the balance tips against its imposition.  "Simply put, Plaintiff's conduct against this Defendant is insufficiently severe for the Court to impose such a drastic remedy at this time." *Id.*

Accordingly, Plaintiff is warned that should she continue to file duplicative, meritless litigation, the Court may impose an injunction prohibiting future filings.  Plaintiff is further warned that future misrepresentations to the Court may also result in sanctions.

## CONCLUSION

For the aforementioned reasons, Plaintiff's Motion to Add an Additional Claim, ECF No. 81, is denied.  Defendant's Motion for Summary Judgment, ECF No. 89, is granted.  Finally, Defendant's Motion for Prefiling Injunction, ECF No. 90, is denied.  The Clerk's Office shall close the case.

So ordered.

Dated: February 24, 2025                    _____/s/_____
                                            Ajmel A. Qureshi
                                            United States Magistrate Judge